```
              UNITED STATES DISTRICT COURT
                DISTRICT OF CONNECTICUT

GOVERNOR M. JODI RELL et al.,   :
    Plaintiffs,                  :
                                 :
VS.                              :       Civil No. 3:05CV1363 (AVC)
                                 :
DONALD RUMSFELD and THE          :
DEFENSE BASE CLOSURE AND         :
REALIGNMENT COMMISSION et        :
al.,                             :
    Defendants.                  :
```

### RULING ON THE PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION

This is an action for declaratory judgment and injunctive relief challenging a recommendation of the Base Closure and Realignment Commission ("the Commission") to realign the Connecticut 103rd Fighter Wing by distributing out of state the A-10 aircraft located at Bradley Air National Guard Station in Windsor Locks, Connecticut.  The plaintiffs, Connecticut Governor Jodi Rell, United States Senators Christopher Dodd and Joseph Lieberman, and United States Representative John Larson claim that the recommendation was made without the consent of Governor Rell and consequently violates Title 32 of the United States Code section 104(c) and Title 10 of the United States Code section 18238.  They now move for a preliminary injunction to enjoin the Commission from forwarding that recommendation to the President of the United States.  For the reasons that hereinafter follow, the motion is GRANTED.

### FACTS

The 103rd Fighter Wing is the only operational flying Air

National Guard unit located within the State of Connecticut. Initially formed in 1917, the 103rd Fighter Wing is made up of the 103rd Operations Group, the 103rd Support Group, the 103rd Logistics Group and the 103rd Medical Squadron.  There are more than 800 men and women assigned to the unit.

The Base Closure and Realignment Act of 1990, 104 Stat. 1808 as amended, note following Title 10 U.S.C. § 2687 (the "BRAC Act") sets forth the process by which military bases in the United States and its territories are identified for closure and realignment.  Pursuant to the BRAC Act, Donald Rumsfeld, the Secretary of Defense, is authorized to make recommendations for the closure and realignment of military bases in the United States to the BRAC Commission.

On May 13, 2005, Secretary Rumsfled transmitted the DoD Base Closure and Realignment Report ("DoD Report") to the BRAC Commission.  The DoD Report recommended the realignment of the Connecticut 103rd Fighter Wing as follows:

> Realign Bradley International Airport Air Guard Station, CT.  The A-10's assigned to the 103rd Fighter Wing will be distributed to the 104th Fighter Wing, Barnes Municipal Airport Air Guard Station, MA (nine aircraft) and retirement (six aircraft).  The wing's expeditionary combat support (ECS) elements will remain in place at Bradley and Bradley will retain capability to support a Homeland Defense mission.

On July 14, 2005, the Commission deputy general counsel advised the Commission that:

> Where the practical result of an Air Force
> recommendation would be to withdraw, disband, or
> change the organization of an Air National
> Guard unit, the Commission may not approve
> such a recommendation without the consent of
> the governor concerned.

(July 14, 2005 memorandum of BRAC deputy general counsel at 15). The commission, however, did not seek the consent of the Governor of Connecticut prior to making its recommendation and the Governor thereafter submitted a letter to the Commission objecting to the recommendation.

On August 26, 2005, the Commission voted to amend this recommendation by striking completely the second and third sentences quoted above and inserting in their place the following recommendation:

> The 103rd Fighter Wing (ANG) Expeditionary
> Combat Support (ECS) elements will remain
> in place at Bradley Field, Connecticut and
> Bradley will retain capability to support
> a Homeland Defense mission.  If the state of
> Connecticut decides to change the organization,
> composition and location of the 103rd
> Fighter Wing to integrate the unit into
> the Future total Force, all other personnel
> allotted to the 103rd Fighter Wing will
> remain in place and assume a mission relevant
> to the security interests of the State of
> Connecticut and consistent with the integration
> of the unit into the Future Total Force,
> including but not limited to air mobility,
> C4ISR, Information Operations, engineering,
> flight training or unmanned aerial vehicles.
> Where appropriate, unit personnel will be
> retrained in skills relevant to the emerging
> mission.  This recommendation does not effect
> a change to the authorized end strength of
> the Connecticut or Massachusetts Air National
> Guard.  [The A-10 Aircraft currently assigned to

3

> Bradley will be redistributed elsewhere. This
> redistribution] is based on a resource-constrained
> determination by the Department of Defense that
> the aircraft concerned will better support
> national security requirements in other
> locations and is not conditioned upon the
> agreement of the state or the commonwealth.

As set forth above, the Commission deleted the May 13, 2005 recommendation and substituted therefore a new recommendation that leaves in place the 103rd Fighter Wing but removes from that unit it's A-10 aircraft – leaving personnel trained to support a flying mission to look to the State of Connecticut to decide whether to reorganize the 103rd consistent with the so-called "Future Total Force" with such missions as "[i]nformation operations, engineering, [and] flight training."

Pursuant to the BRAC Act, the Commission will forward this recommendation to the President of the United States on September 8, 2005. The President has until September 23, 2005 to review this recommendation as well as all others contained within the report and either approve or disapprove of them in their entirety. See BRAC Act § 2914(e)(1). If the President disapproves the Commission's recommendations, the Commission may prepare a revised list of recommendations and transmit those recommendations to the President by October 20, 2005. Id. § 2914 (e)(2). If the President disapproves the revised recommendations, the 2005 BRAC process is terminated. Id. § 2914 (e)(3). If the President approves either the original or

4

revised recommendations, he must send the approved list and a certification of approval to Congress. Id. § 2914 (e)(3). If Congress does not enact a resolution disapproving the approved recommendations within 45 days after receiving the President's certification of approval, the Secretary must carry out all of the recommendations. Id. § 2904 (e).

## STANDARD

To prevail on a motion for preliminary junction, the plaintiff must demonstrate: (1) irreparable harm and (2) either (a) a likelihood of success on the merits of the underlying claim, or (b) that there are sufficiently serious questions going to the merits to make them a fair ground for litigation, and that the balance of hardships tips decidedly in favor of the moving party. Moore v. Consolidated Edison Co., 409 F.3d 506, 510 (2d Cir. 2005). "However, when 'the moving party seeks to stay governmental action taken in the public interest pursuant to a statutory or regulatory scheme,' the injunction should be granted only if the moving party meets the more rigorous likelihood of success standard." Beal v. Stern, 184 F.3d 117, 122 (2d Cir. 1999). Further, where, as here, the "the injunction sought 'will alter, rather than maintain the status quo'. . . the moving party must show a 'clear' or 'substantial' likelihood of success." Id.

**DISCUSSION**

I.   Irreparable Harm

The plaintiffs first argue that if the Commission forwards the BRAC recommendation to distribute the A-10 aircraft at Bradley Field to locations out of state, they will suffer irreparable harm in that: (1) the Governor's right under 32 U.S.C. § 104 (c)[1] and 10 U.S.C. § 18238[2] to disapprove changes to the organization or allotment of the Connecticut Air National Guard will be nullified; (2) with no Air National Guard aircraft stationed within its borders or under the Governor's command, the Governor and her citizens will be harmed by the inability to respond to homeland security threats and civil emergencies; and (3) enlistments and re-enlistments in Connecticut's Air National

---

[1] 10 U.S.C. § 18238 provides:

> A unit of the Army National Guard of the United States or the Air National Guard of the United States may not be relocated or withdrawn under this chapter without the consent of the Governor of the State or, in the case of the District of Columbia, the Commanding general of the National Guard of the District of Columbia.

[2] 32 U.S.C. § 104(c) provides:

> To secure a force the units of which when combined will form complete higher tactical units, the President may designate the units of the National Guard, by branch of the Army or Organization of the Air Force, to be maintained in each State and Territory, Puerto Rico, and the District of Columbia.  However, no change in the branch, organization, or allotment of a unit located entirely within a State may be made without the approval of its governor.

6

Guard would be negatively affected by elimination of Connecticut's only Air National Guard Wing.  In response, the Commission maintains that, in accordance with Dalton v. Spector, 511 U.S. 462, 114 S. Ct. 1719 (1994), the court does not have jurisdiction to review the Commission's recommendations as they do not constitute a final agency action under the Administrative Procedures Act ("APA"), 5 U.S.C. § 704 et seq., and are otherwise non-justiciable.  Moreover, the Commission maintains that, should the court decide that it does have jurisdiction to hear this matter, the plaintiffs have failed to establish irreparable harm because any such harm has either already occurred when the Secretary of Defense issued the original recommendation, or will occur, if at all, many months from now and only if that recommendation is accepted by the President and becomes final.

As a threshold matter, the court concludes that it does have jurisdiction to hear this case.  As the matter has not been brought pursuant to the APA and does not seek review of any discretionary action, the court is not bound by Dalton v. Spector and may look to general principles governing ripeness of administrative agency action in determining whether the case is justiciable.  In this regard, the United States Supreme Court has indicated that in cases where, as here, a declaratory judgment is sought, two considerations should be considered when determining

7

whether the matter is ripe for judicial review: (1) the fitness of the matter for judicial decision and (2) the hardship to the parties of withholding court consideration.  In re Combustion Equipment Associates, Inc., 838 F. 2d 35, 38 (2d Cir. 1988) (citing Abbott Laboratories v. Gardner, 387 U.S. 136, 149 (1967)).

1.   Fitness For Judicial Decision

"Among the factors determining whether the matter is fit for judicial decision are: (1) whether the agency action is 'final' and (2) whether the issue is purely legal . . ." Id. (quoting Garner v. Toilet Goods Association, 387 U.S. 167 (1967)).

   A.  Finality

"An order may be final though it is not the very last step in the administrative process, but it is not final if remains tentative, provisional, or contingent, subject to recall, revision, or reconsideration by the issuing agency." Mountain States Tel. & Tel. Co v. F.C.C., 939 F.2d 1021, 1027 (D.C. Cir. 1991).  Although the Commission's recommendation is not the final action that will be taken with respect to the recommendation to strip the 103rd of its aircraft, it is the last action taken by the Commission and is not "subject to recall, revision, or reconsideration by the issuing agency." Mountain States, 939 F.2d at 1027.  Accordingly, the agency action challenged here is sufficiently final to be subject to judicial review.

B.   Purely Legal Issue

"A suit raising primarily legal issues is a better candidate for declaratory judgment than is a suit raising factual issues . . ." In re Combustion Equipment Associates, Inc., 838 F. 2d 35, 38 (2d Cir. 1988).  The present action raises purely legal issues arising out of a statute and thus militates in favor of the conclusion that the matter is ripe.

2.   Hardship In Withholding Consideration

As explained above, in determining whether the suit is ripe, the court must consider any hardship to the parties if consideration is withheld.  The court is of the opinion that the Governor of Connecticut would suffer significant hardship if consideration were to be withheld, as once the recommendation is submitted to the President, the Governor's claim that her authority has been abrogated – as a statutory claim – is not subject to judicial review.  Dalton, 511 U.S. at 462 ("where a statute, such as the [BRAC] Act, commits decisionmaking to the discretion of the President, judicial review of the President's decision is not available.")

Having considered the requirements set forth above, the court concludes that the action is ripe for Article III review and is therefore justiciable.

Reaching the merits of the case, the court is persuaded that the plaintiffs have made a showing of irreparable harm.  "To

9

establish irreparable harm, a party seeking preliminary injunctive relief must show that 'there is a continuing harm which cannot be adequately redressed by final relief on the merits' and for which 'money damages cannot provide adequate compensation.'" Kamerling v. Massanari, 295 F.3d 206, 214 (2d Cir. 2002). A past injury is insufficient to establish irreparable harm. Deshawn v. Safir, 156 F.3d 340, 344 (2d Cir. 1998). To be sure, in this case there has been a past harm to the Governor's right to disapprove of changes to the organization and allotment of the 103rd Fighter Wing under 32 U.S.C. § 104(c). Because, however, the Commission has pursued a course of ignoring the Governor's objection and a legal opinion of its own deputy general counsel, the Commission in this way has perpetuated a past harm into the present and, without injunctive relief at this juncture, the court is persuaded that the harm will become permanent with the loss of the A-10's as the Commission cannot recall its recommendation once submitted to the President. As the conduct presented here constitutes a continuing violation of the Governor's authority under 32 U.S.C. § 104 (c) and derivatively jeopardizes the State's ability to protect its citizens, the court concludes that the plaintiffs have demonstrated irreparable harm.

II. Clear or Substantial Likelihood of Success

The plaintiffs next argue that the Commission's

recommendation to strip the 103rd Fighter Wing of it's A-10 aircraft without gubernatorial consent constitutes a change in the organization or allotment of that unit and is therefore void <u>ab initio</u> as a violation of federal law and, in particular, 32 U.S.C. § 104 (c)[3]. In response, the Commission maintains that the plain text of § 104 (c) does not apply to the relocation of aircraft and moreover, the history and purpose of the BRAC process demonstrates that the requirement for gubernatorial consent does not apply. The court cannot agree. 32 U.S.C. § 104(c) provides:

> To secure a force the units of which when combined will form complete higher tactical units, the President may designate the units of the National Guard, by branch of the Army or Organization of the Air Force, to be maintained in each State and Territory, Puerto Rico, and the District of Columbia. However, <u>no change in the branch, organization, or allotment of a unit located entirely within a State may be made without the approval of its governor</u>.

<u>Id.</u> (emphasis added). Although the court agrees with the Commission that the text of § 104 (c) does not speak to the relocation of aircraft, certainly the relocation of the aircraft in this case would leave pilots and other military personnel trained to support a flying mission with nothing to do and, in this way, constitute a dramatic change in the organization and

---

[3] The court need not, and expressly does not reach the issue of whether there is a clear or substantial likelihood that the Commission's recommendation violated 10 U.S.C. § 18238.

11

allotment of that unit.  With respect to the Commission's argument that the history and purpose of the BRAC process has somehow nullified the statutory mandate of gubernatorial consent to any such re-organization, the court concludes that the argument is simply without merit.  Accordingly, the court is persuaded that the plaintiffs have established a clear or substantial likelihood of success on the merits of their claim that the Commission's recommendation violates 32 U.S.C. § 104 (c).

## **CONCLUSION**

For the foregoing reasons, the motion for preliminary injunction is GRANTED.

It is so ordered this 7th day of September 2005 at Hartford, Connecticut.

_____
Alfred V. Covello
United States District Judge